UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

In re: LAURIE D. SMITH  f/d/b/a   :   Case No. 08-20178REF
       D & L CONTRACTORS,    :   Chapter 7
         Debtor             :

-----------------------------------------------------------------------

LAURIE D. SMITH,         :   Adv. No. 08-2014
      Plaintiff         :
   v.                :
BRADLEY BOTZET,       :
      Defendant       :

-----------------------------------------------------------------------

BRADLEY BOTZET,       :   Adv. No. 08-2040
      Plaintiff         :   Consolidated with Adv. No. 08-2014
   v.                :
LAURIE D. SMITH,        :
      Defendant       :

# MEMORANDUM  OPINION

## I.  INTRODUCTION

Bradley Botzet was an employee of the construction company in which Debtor, Laurie D. Smith, was a partner with her now deceased husband.  Mr. Botzet was seriously injured while working for the partnership.  Most unfortunately, Debtor and her husband had no workers' compensation insurance.  Pursuant to Pennsylvania law, Mr.

1

Botzet was able to have a "place-holding"[1] judgment entered in the Berks County Court

of Common Pleas against Debtor[2] and in favor of Mr. Botzet, without having a hearing.

After a later quasi-judicial hearing on the merits of Mr. Botzet's claim by a workers'

compensation judge, the judgment in the Berks Court was twice revised and increased.

Debtor has moved for summary judgment on two primary issues arising

from Mr. Botzet's injuries.  First, Debtor claims that Mr. Botzet's liens on her real and

personal property are judicial liens subject to avoidance because they impair her

exemptions.  Second, Debtor argues that I should reject Mr. Botzet's effort to determine

that Debtor's obligation owed to him is nondischargeable because the obligation arose

from Debtor's failure to obtain proper insurance for her company.

To resolve the avoidance of liens matter, I must address two previously

undecided[3] issues.  First, is Mr. Botzet's workers' compensation judgment lien on

Debtor's real estate (the "Real Property Lien") a judicial lien that is subject to avoidance?

Second, is Mr. Botzet's lien on Debtor's personal property (the "Personal Property

Lien"), created when the sheriff levied upon Debtor's property to collect Mr. Botzet's

---

[1]The judgment is "place-holding" because, when liability and damages are finally
determined, they relate back to the date on which the judgment was originally entered.

[2]The judgment was also entered against Debtor's now deceased husband, John R. Smith,
who died after the judgment was entered, and against the partnership.  Neither debtor's deceased
husband, the partnership, nor the judgment against them, however, is germane to this litigation.

[3]I discuss at pages 21 - 22, infra, a 1988 Bankruptcy Court decision on the avoidance of
workers' compensation judgment liens.  That decision was entered without the benefit of two
controlling decisions of the Third Circuit Court of Appeals, which I believe change the analysis
sufficiently to render the 1988 case inapplicable.

2

judgment, a judicial lien that is also subject to avoidance?

A lien on real estate arising from a Pennsylvania workers' compensation judgment is either a statutory lien or a judicial lien, only the latter of which is subject to avoidance. I conclude below that the Real Property Lien arising from the judgment entered pursuant to the Pennsylvania workers' compensation law constitutes a statutory lien on Debtor's real property. The Real Property Lien, therefore, is not subject to avoidance as a matter of law. I will deny Debtor's summary judgment motion insofar as it seeks the entry of judgment in favor of Debtor on avoidance of the Real Property Lien.

My conclusion that the Real Property Lien is a statutory lien does not end my consideration of that issue. I now have no need for a hearing or further fact finding because the matter is solely an issue of law. A Pennsylvania workers' compensation judgment lien on real property, such as the Real Property Lien, constitutes a statutory lien that is not avoidable as a matter of law. I will therefore enter judgment on this issue against the movant Debtor and in favor of respondent Mr. Botzet.

On the other hand, the sheriff's levy on personal property leading to the Personal Property Lien results in a lien that differs significantly from the Real Property Lien. Neither party addressed this distinction in the briefs or arguments. The Personal Property Lien arose well after the entry of the original judgment. The lien created by the sheriff's levy differs substantially in a number of ways from the statutorily created judgment lien that was entered automatically. Moreover, the record relating to the validity and timing of the sheriff's levy (or levies) is incomplete. Summary judgment is

3

not appropriate for either party in the matter of the Personal Property Lien and I will deny Debtor's motion as it pertains thereto.

Finally, I will address the other issue in Debtor's motion for summary judgment – nondischargeability. Debtor argues that Mr. Botzet's claim is fully susceptible to being discharged. Mr. Botzet argues to the contrary. I cannot decide the dischargeability issue at this stage of the litigation because material issues of fact exist. The dischargeability issue requires a trial in which I will judge Debtor's state of mind and other factual and credibility issues to determine if Mr. Botzet's claim is or is not dischargeable. I will therefore deny Debtor's motion for summary judgment insofar as it seeks a determination of dischargeability before a trial on the merits.

This Memorandum Opinion constitutes my conclusions of law within the context of my determination of Debtor's motion for summary judgment.

# II.  FACTUAL AND PROCEDURAL BACKGROUND

## A.  INJURY TO MR. BOTZET AND DETERMINATION OF WORKERS' COMPENSATION CLAIM AND JUDGMENT

Long before the filing of this Chapter 7 case, Debtor had been a partner with her late husband in a business trading as D & L Contractors.   D & L's business was constructing and demolishing commercial properties.  Debtor's personal responsibilities with D & L included maintaining the paperwork, paying the bills, and maintaining and paying for insurance, including workers' compensation coverage, for the business.[4]

Mr. Botzet was hired as a foreman by D & L in 2000.  While at work on January 22, 2001, Mr. Botzet was injured and is now totally disabled.[5]  D & L, however, had no workers' compensation insurance in effect when Mr. Botzet was injured.[6]  Debtor testified during her deposition that she was suffering from a brain tumor around this period of time, which tumor affected her memory.  As a result, she testified, she was

---

[4]Deposition of Laurie D. Smith, June 17, 2008,  p. 6 (attached as Exhibit A to Mr. Botzet's Memorandum in Opposition to Motion for Summary Judgment, which was filed on September 23, 2008, as docket entry Number 29) ("Debtor's Deposition").

[5]Declaration of Mr. Botzet, pp. 3-4 (attached as Exhibit B to Mr. Botzet's Memorandum in Opposition to Motion for Summary Judgment filed on September 23, 2008, docket entry 29) ("Mr. Botzet's Declaration").

[6]Debtor's Deposition, p. 5.

5

unaware that D & L did not have workers' compensation insurance.[7]

On or about May 10, 2002, Mr. Botzet filed a Claim Petition for Workers' Compensation with the Pennsylvania Department of Labor and Industry against Debtor, her late husband, and D & L.[8]  Mr. Botzet thereafter filed a certified copy of the Claim Petition with the Berks County Prothonotary on June 4, 2002, in accordance with the terms of the second paragraph of Section 428 of the Pennsylvania Workers' Compensation Act, 77 Pa. Stat. Ann. §931.[9]  As mandated by Section 428, the Berks County Prothonotary immediately entered a judgment against Debtor and her husband in the amount of $30,000.[10]  Neither Debtor nor her late husband nor any other person on behalf of D & L had responded to the Claim Petition.[11]

A hearing was scheduled on Mr. Botzet's workers' compensation Claim Petition on August 20, 2002.  Debtor and her husband failed to appear at the hearing.[12]  On September 30, 2002, Workers' Compensation Judge Brian G. Eader issued his

_____

[7]Id.

[8]Mr. Botzet's Declaration, p. 2, ¶5; Claim Petition attached to Mr. Botzet's Declaration as Exhibit 1.

[9]Mr. Botzet's Declaration, p. 2, ¶6.  See text at pp. 12 - 13, infra, for a full description of the second paragraph of Section 428.  Unless specifically mentioned to the contrary, any reference to Section 428 refers to the second paragraph thereof.  77 Pa. Stat. Ann. §931.

[10]Mr. Botzet's Declaration, p. 2, ¶7; Judgment entered by Prothonotary dated June 4, 2002 attached to Mr. Botzet's Declaration as Exhibit 2.

[11]Mr. Botzet's Declaration, p. 2, ¶5.

[12]Mr. Botzet's Declaration, p. 2, ¶8.

decision in the form of findings of fact and conclusions of law. Judge Eader concluded that Mr. Botzet sustained work injuries resulting in his total disability commencing on January 23, 2001.[13] The Judge ordered Debtor and her husband to pay Mr. Botzet compensation and interest thereon in the weekly amount of $373.33, beginning January 23, 2001, and continuing in perpetuity thereafter. Judge Eader also concluded that Debtor and her husband were obliged to pay all medical expenses incurred by Mr. Botzet in connection with his injury.[14]

On January 23, 2003, Mr. Botzet filed a praecipe for the entry of a judgment in the amount of $46,944.85, based upon Judge Eader's September 30, 2002 decision.[15] The amount was calculated based on Mr. Botzet's compensation, interest, medical expenses, and legal fees from January 23, 2001, through January 23, 2003.[16] The $46,944.85 amount both replaced the original $30,000 amount in the judgment, and related back to June 4, 2002, the date on which the original judgment had been entered.[17]

On February 21, 2006, also based on Judge Eader's decision, Mr. Botzet filed another praecipe directing the Prothonotary to enter an additional judgment, which

---

[13]Stipulation, dated and filed January 30, 2009, docket entry Number 44 in this case (the "Stipulation").

[14]Mr. Botzet's Declaration, p. 3, ¶¶9 & 10; Decision of Workers' Compensation Judge Brian G. Eader attached to Mr. Botzet's Declaration as Exhibit 3.

[15]Stipulation.

[16]Id.

[17]Id.

also increased the amount and related back to the date of the original judgment. The additional judgment was in favor of Mr. Botzet and against Debtor and her husband in the amount of $108,224.19.[18] The additional judgment was for compensation, interest, medical expenses, and legal fees from January 23, 2003, through February 9, 2006.[19] The total amount of the judgment therefore became the sum of the January 23, 2003 judgment ($46,944.85) plus the February 21, 2006 judgment ($108,224.19), which is $155,169.04. Again, the increased amount of the judgment in its entirety relates back in priority to June 4, 2002.[20]

## B.  MR. BOTZET'S COLLECTION EFFORTS AND BANKRUPTCY OF DEBTOR AND HER HUSBAND

Debtor and her husband made no payments to Mr. Botzet.[21] Sometime in late 2003 or early 2004, Mr. Botzet directed the sheriff to levy upon certain personal property owned by Debtor, her husband, or D & L.[22] Nothing in the record presented to me identifies the nature of the property levied upon to be sold (personal or real property)

---

[18]Mr. Botzet's Declaration, p. 3, ¶11; Judgment entered by Prothonotary on February 21, 2006, attached to Mr. Botzet's Declaration as Exhibit 4.

[19]Stipulation.

[20]Id.

[21]Debtor's Deposition, p.8.

[22]Id.

at a later sheriff's sale.  In a colloquy with both counsel in Chambers on January 12,

2009, I was informed that the property levied upon by the sheriff included fairly large

construction equipment.  The nature of the personal property levied upon is not critical,

however, to my disposition of the summary judgment motion.  Similarly, nowhere in the

record can I find the dates of either the sheriff's original levy or the originally scheduled

sale.  The original sheriff's sale was stayed when Debtor and her husband filed their joint

bankruptcy on January 22, 2004.[23]  The 2004 bankruptcy case was dismissed less than

three months later, on April 14, 2004, for their failure to file required documents.

Mr. Botzet scheduled a second sheriff's sale.[24]  Once again, the sheriff's

sale was stayed when Debtor and her husband filed their second joint bankruptcy on

March 31, 2006.[25]  I dismissed their second bankruptcy case slightly more than five

weeks later, on May 8, 2006, again for their failure to file required documents.  A third

sheriff's sale was scheduled on January 2, 2008.  The January 2008 sale was never held,

although the record before me does not indicate why the sale did not occur.  Debtor filed

the present Chapter 7 bankruptcy case in her name alone on January 28, 2008.

---

[23]Id.  The 2004 bankruptcy case was docketed at Case No. 04-20341.

[24]Id.  I have nothing in the record to tell me whether the sheriff scheduled this and later
sheriff's sales pursuant to the original levy (whenever it was conducted) or whether the sheriff
performed new levies against Debtor's property before each re-scheduled sale.

[25]Id.  Debtor testified in her deposition that she had filed the second bankruptcy petition
alone.  This court's docket, however, shows that Debtor and her husband filed the second
bankruptcy case jointly, which case was docketed at Case No. 06-20358.

## C.  PROCEDURAL HISTORY IN THIS BANKRUPTCY

On March 7, 2008, Debtor filed her complaint to avoid Mr. Botzet's
workers' compensation liens under Section 522(f)(1) of the Bankruptcy Code.  11 U.S.C.
§522(f)(1).  The avoidance complaint was docketed at Adv. No. 08-2014.  Mr. Botzet
filed his answer to the avoidance complaint on April 8, 2008.  On May 12, 2008, Mr.
Botzet filed his complaint to have the debt owed to him by Debtor deemed
nondischargeable under Section 523(a)(6) of the Bankruptcy Code.  11 U.S.C. §523(a)(6).
The dischargeability complaint was docketed at Adv. No. 08-2040.  Debtor filed her
answer to the dischargeability complaint on June 5, 2008.  On June 30, 2008, I
consolidated the two adversary proceedings under the caption in Adv. No. 08-2014.

On September 2, 2008, Debtor filed her Motion for Summary Judgment,
which remains pending as the basis for the present matter.  Debtor seeks summary
judgment against Mr. Botzet on both (1) her avoidance complaint and (2) Mr. Botzet's
dischargeability complaint.  Briefs and some supporting records have been filed by the
parties and I have heard the parties' oral argument on the Motion for Summary Judgment.
The matter is now ready for disposition.

# III.   DISCUSSION

## A.  SUMMARY JUDGMENT STANDARD

This motion for summary judgment is governed by Federal Rule of Civil Procedure 56, which is made applicable to this adversary proceeding by Federal Rule of Bankruptcy Procedure 7056.  Through Bankruptcy Rule 7056, Federal Rule 56(c) provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, and affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law."  The party moving for summary judgment has the burden of demonstrating the absence of a genuine issue concerning any material fact.  Celotex v. Catrett, 477 U.S. 317, 324-25 (1986). The substantive law will determine which facts are material.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

## B.   AVOIDANCE OF LIENS UNDER SECTION 522(f)(1)

### 1.  Avoidance of Judicial Liens

Section 522(f)(1) authorizes the avoidance of a judicial lien that impairs an exemption to which a debtor would otherwise be entitled.  11 U.S.C. §522(f)(1).  The

11

Bankruptcy Code recognizes three types of liens:  (1) Consensual liens; (2) judicial liens; and (3) statutory liens.  In re Schick, 418 F.3d 321, 323 (3d Cir. 2005); Graffen v. City of Philadelphia, 984 F.2d 91, 96 (3d Cir. 1992).  Because Mr. Botzet's liens were not created by agreement of the parties, they are not consensual liens.[26]  They must, therefore, be either judicial liens or statutory liens.  Schick, 418 F.3d at 323; Graffen, 984 F.2d at 96.  Judicial liens may be avoided under Section 522(f)(1), but only if they also impair some exemption to which Debtor would otherwise be entitled.  If, however, Mr. Botzet's liens are statutory liens, they may not be avoided even if they impair some exemption of Debtor's.

The narrow issue presented in this first part of Debtor's Summary Judgment Motion therefore is whether Mr. Botzet's liens are judicial liens.  Debtor maintains that she is entitled to summary judgment because the workers' compensation liens at issue are judicial liens; Mr. Botzet argues that the liens are statutory liens.  No genuine issue of material fact affects resolution of this issue and it is ripe for my resolution through summary judgment.  Celotex Corp., 477 U.S. at 324-25.

### 2.  Nature of the Liens at Issue in This Case

Both parties agree that the judgment at issue was created and now exists pursuant to the second paragraph of Section 428 of the Pennsylvania Workers' Compensation Act, 77 Pa. Stat. Ann. §931, which states in relevant part as follows:

---

[26]Consensual liens include, without limitation, mortgages on real property and security interests in personal property created by security agreements and financing statements.

**§931.  Temporary judgment on compensation agreement
or claim petition; entry in common pleas; approval of
agreement or petition; lien; priorities**

Whenever, after an injury, any employee or his dependents
.  .  .  [of] an employer, who has not accepted or complied
with the provisions of section three hundred five [which
provides that an employer shall maintain workers'
compensation insurance],  .  .  .  shall file a claim petition
against such employer, he may file a certified copy thereof
with the prothonotary of the court of common pleas of any
county.  The prothonotary shall enter the amount  .  .  .
claimed in any such claim petition as judgment against the
employer, and where the amount so  .  .  .  claimed is for
total and permanent disability, such judgment shall be in the
sum of thirty thousand dollars. If  .  .  .  compensation [is]
awarded as claimed in the petition, the amount of
compensation  .  .  .  claimed in the petition shall be a lien,
as of the date when the  .  .  .  petition was filed with the
prothonotary.  Pending the  .  .  .  award of compensation,
no other lien which may be attached to the employer's
property during such time shall gain priority over the lien of
such  .  .  .  award; but no such execution shall issue on any
compensation judgment before the approval of  .  .  .  the
award of compensation on the said petition.

I must look to the Bankruptcy Code, of course, to determine whether liens

arising from Section 428 should be categorized as either judicial liens or statutory liens.

Schick, 418 F.3d at 323.  Section 101(36) of the Bankruptcy Code defines a "judicial

lien" as a "lien obtained by judgment, levy, sequestration, or other legal or equitable

process or proceeding." 11 U.S.C. §101(36).  See also Schick, 418 F.3d at 323; Graffen,

984 F.2d at 96.  Judicial liens include, of course, the entry of a judgment in a

Pennsylvania civil proceeding because any such judgment immediately becomes a lien

against real estate in the county in which the judgment is entered.  42 Pa. Cons. Stat. Ann.

13

§4303.  A judgment entered in a federal court civil proceeding can also become a judicial lien on certain real property in Pennsylvania.  28 U.S.C. §1962; 42 Pa. Cons. Stat. Ann. §4305; Food Centers, Inc. v. Hamilton Bank (In re Food Centers, Inc.), 71 B.R. 16 (Bankr. E.D. Pa. 1986).  Judicial liens also include, generally, the liens created by (1) a sheriff's levy against personal property, (2) garnishment, and (3) other procedural mechanisms, all of which are available for a creditor to enforce or collect a judgment entered in civil litigation in either state or federal court.   See, e.g., Pa. R.C.P. Nos. 3101 - 3159.[27]

A "statutory lien," on the other hand, is defined in Section 101(53) of the Bankruptcy Code as follows:

> The term "statutory lien" means lien arising solely by force of a statute on specified circumstances or conditions, or lien for distress for rent, whether or not statutory, but does not include security interest or judicial lien, whether or not such interest or lien is provided by or is dependent on a statute and whether or not such interest or lien is made fully effective by statute.

11 U.S.C. §101(53).  See also Schick, 418 F.3d at 323; Grafen, 984 F.2d at 96.[28]

The legislative history of the Bankruptcy Code includes instruction that a "'statutory lien is only one that arises automatically and is not based on an agreement to give a lien or on judicial action.'" Schick, 418 F.3d at 323, quoting H.R. Rep. No. 595,

---

[27]This list identifying examples of judicial liens is not intended to constitute a complete list of judicial liens.

[28]A partial list of statutory liens is set forth in the quoted text from Schick at page 15, infra.

14

95th Cong., 314 (1977); S. Rep. No. 95-989, 95th Cong., 27 (1978); reprinted in 1978

U.S.C.C.A.N. 5811, 6271.  On the other hand, for a lien to qualify as a judicial lien,

"there must be some judicial or administrative process or proceeding that ultimately

results in the obtaining of the lien."  Schick, 418 F.3d at 328.  Put another way by the

Collier bankruptcy treatise, "a judicial lien arises only by virtue of judicial proceedings in

the absence of which there would not be such a lien (footnote omitted).  The statutory lien

by definition arises without any judicial proceeding."  Collier on Bankruptcy, 15th Ed.

Rev., at ¶101.53.  Finally, the Third Circuit recognized in Schick:

> In many cases, the distinction between a statutory lien and a
> judicial lien will be straightforward.  For instance, the
> legislative history indicates that mechanics' liens,
> materialmens' liens, and warehousemens' liens, as well as tax
> liens, are types of statutory liens. (Citations omitted).
> However, in other contexts, the distinction between statutory
> and judicial liens has proven more troublesome, and some
> courts have remarked that the Code provides little assistance
> in resolving such disputes.  (Citation omitted).  .  .  .   The
> relevant inquiry is to determine the nature of the  .  .  .  lien,
> whether it arises solely by force of statute, or whether it
> results from some type of judicial process or proceeding.

Schick, 418 F.3d at 323-24.

### 3.  Statutory vs. Judicial Lien Analysis - Lien on Debtor's Real Property

### a.  The Real Property Lien

Mr. Botzet obtained his original workers' compensation judgment on June

4, 2002.  He simply filed a certified copy of his Claim Petition, previously filed with the

Pennsylvania Department of Labor and Industry, with the Prothonotary of the Berks

County Court, and a judgment was automatically created.  This is the procedure

established by Section 428 of the Pennsylvania Workers' Compensation Act.  Because

Mr. Botzet, in his Claim Petition, sought total and permanent disability, the Workers'

Compensation Act dictated that the amount of the original judgment entered by the

Prothonotary was $30,000.  77 Pa. Stat. Ann. §931.  No judicial process or proceeding

had determined liability or damages when Mr. Botzet filed his Claim Petition with the

Prothonotary.  To the contrary, the only basis for the creation of Mr. Botzet's judgment

and the resulting Real Property Lien was the filing of the Claim Petition pursuant to

Section 428 of the Workers' Compensation Act.

Following the hearing, which had been scheduled in August 2002,[29] to

determine the amount of Mr. Botzet's claim, Workers' Compensation Judge Eader

determined Debtor's liability and the amount of Mr. Botzet's injuries and damages in his

September 30, 2002 decision.  On January 23, 2003, Mr. Botzet filed his praecipe in the

Berks County Court directing the Prothonotary to enter an increased judgment in the

amount of $46,944.85.   The $46,944.85 amount replaced the $30,000 original amount

and represented compensation and damages that Mr. Botzet was owed for the period from

January 23, 2001, through January 23, 2003.[30] The workers' compensation judgment, in

the newly revised amount of $46,944.85, related back in priority to the original filing

---

[29]Debtor and her husband did not oppose Mr. Botzet's claim for liability and damages
and they failed to appear at the hearing.

[30]Stipulation.

16

date, June 4, 2002, pursuant to Section 428.

On February 21, 2006, Mr. Botzet filed another praecipe, this time for an additional judgment, directing the Prothonotary to increase the judgment by an additional $108,224.19, again as a result of Judge Eader's workers' compensation decision. The $108,224.19 amount represented Mr. Botzet's compensation and damages for the period from January 23, 2003, through February 9, 2006. The newly increased workers' compensation judgment, in the aggregate amount of $155,169.04 for the time from January 23, 2001, through February 9, 2006, continued to relate back to the original filing date, June 4, 2002, for the priority of the increased Real Property Lien. Therefore, although the third and last component of the workers' compensation award was filed in the Berks Court in early 2006, the present lien of the total workers' compensation judgment lien against Debtor's real property relates back to June 4, 2002.

The Real Property Lien was created solely by force of Section 428 of the Pennsylvania Workers' Compensation Act, and not by virtue of any hearing or trial. No judicial or quasi-judicial determination of liability or damages had been made when Mr. Botzet filed his Claim Petition with the Prothonontary. Section 428 of the Pennsylvania Workers' Compensation Act dictated that Mr. Botzet was immediately entitled to a judgment fixed at $30,000 without the need for any judicial, quasi-judicial, or administrative decision. The judgment, of course, was subject to being revised and increased (or decreased) after a workers' compensation hearing. The workers' compensation judgment created thereby, as originally filed and as subsequently revised

17

and increased, constituted a lien on all real property of Debtor and her husband in Berks

County.  42 Pa. Cons. Stat. Ann. §4303.

When faced with resolution of the judicial lien vs. statutory lien issue in a

lien avoidance matter, the Third Circuit Court considers as a factor whether the amount of

the lien is established by statute or administrative regulation or determination.  If it is so

established, the Third Circuit Court categorizes the lien as a statutory lien and not a

judicial lien.  See Schick, 418 F.3d at 326; Graffen, 984 F.2d at 96; see also Braxton v.

Bureau of Unemployment Compensation Benefits and Allowances (In re Braxton), 224

B.R. 564, 568 (Bankr. W.D. Pa. 1998)(court found state agency's lien for overpaid

unemployment benefits to be a statutory lien because the state agency administratively

determined the amount of the lien and filed it with the local prothonotary).  Mr. Botzet's

Real Property Lien in this case was fixed by Section 428 of the Pennsylvania Workers'

Compensation Act at $30,000, without any judicial, quasi-judicial, or administrative

determination of either liability or damages.  77 Pa. Stat. Ann. §931.  Again pursuant to

Section 428, the amount of the original judgment (and therefore the amount of the lien)

was increased twice, the last increase being to $155,169.04.

**b.  Workers' compensation judgment liens are analogous to mechanics'
liens**

I realize, of course, that the present amount of the judgment was ultimately

determined by Judge Eader's quasi-judicial decision.  I analogize that subsequent

determination to the procedural mechanism governing mechanic's liens, which are

consistently regarded as statutory liens.  <u>See, e.g., Schick</u>, 418 F.3d at 324.  In fact, the

entire procedure under Section 428 is analogous to the procedure that governs the

creation and enforcement of mechanic's liens.  The Third Circuit Court, citing the

legislative history of the Bankruptcy Code, has expressly identified mechanic's liens as

examples of statutory liens.  <u>See</u> S. Rep. 95-989 at 27; H.R.Rep. No. 95-595 at 314

(1977), <u>reprinted in</u> 1978 U.S.C.C.A.N. 5787, 5813, 6271; <u>Schick</u>, 418 F.3d at 324.

The Pennsylvania statute that creates mechanics' liens has several

similarities to the Pennsylvania Workers' Compensation Act.  In both statutes, the liens

are created immediately prior to any judicial or quasi-judicial determination of liability or

amount, by the simple filing of a claim with the Prothonotary.  <u>Compare</u> 49 Pa. Stat. Ann.

§1502(a) (mechanics' lien)[31] <u>with</u> 77 Pa. Stat. Ann. §931 (workers' compensation lien).

In addition, when liability on the claim and the amount of the claim are finally determined

through a judicial or quasi-judicial proceeding, both statutes provide for the increase (or

decrease) of the original claim and the relation back of the new amount to an earlier date

for priority purposes.

---

[31]Section 502 of the Pennsylvania mechanics' lien statute states in pertinent part:

**(a) Perfection of Lien.**  To perfect a lien, every claimant must:
(1) file a claim with the prothonotary as provided by this act within
six (6) months after the completion of the work; and
(2) serve written notice of such filing upon the owner within one
(1) month after filing, giving the court, term and number and date
of filing of the claim.  .  .  .

49 Pa. Stat. Ann. §1502.

19

The mechanics' lien law has a wrinkle that does not diminish the analogy

with the workers' compensation statute.  When the liability and the amount of the claim

are judicially determined, the mechanics' lien relates back to either (1) the date of visible

commencement of work, if the work is a new improvement or (2) the date the claim was

filed, if the work is alteration or repair of an existing improvement.  49 Pa. Stat. Ann.

§1508(a) & (b).  The Pennsylvania workers' compensation statute does not provide that,

after compensation is finally determined by the workers' compensation judge, the lien in

the amount as finally decided relates back to the date of the employee's injury.  On the

other hand, the judgment lien does relate back to the date that the claim petition was

originally filed with the prothonotary.  <u>See</u> 77 Pa. Stat. Ann. §931.  Finally, both statutes

prohibit the claimant from attempting to execute on the lien until after a judicial or quasi-

judicial determination of liability and the actual amount of the claim has been made.

<u>Compare</u> 49 Pa. Stat. Ann. §1706(a) (mechanics' lien)[32] <u>with</u> 77 Pa. Stat. Ann. §931

(workers' compensation lien).

### c.  The Metros decision

Debtor argues, of course, that the filing of the Claim Petition with the

---

[32]Section 706 of the Pennsylvania mechanics' lien statute states in pertinent part:

> **(a) Judgment Essential to Execution.**  No execution shall issue
> against the property subject to a claim except after judgment shall
> have been obtained upon the claim, and within five (5) years from
> the date of such judgment or a revival thereof.

49 Pa. Stat. Ann. §1706.

20

Prothonotary renders the workers' compensation lien a judicial lien.  The mere ministerial act of docketing Mr. Botzet's judgment by the Prothonotary, however, cannot be deemed to create the requisite legal process or proceeding to render the lien a judicial lien. Schick, 418 F.3d at 325-26; Graffen, 984 F.2d at 97.  For this reason, I respectfully disagree with the approach taken by the court in In re Metros, Bankr. No. 88-00130, 1988 WL 104575, at *1 (Bankr. W.D. Pa. October 3, 1988).

      In Metros, the court found that a workers' compensation judgment lien held by an employee against his former employer pursuant to Section 428 was a judicial lien solely because the lien arose only after the claimant filed a copy of the claim petition with the state court.  The prothonotary was then required to enter the amount demanded in the claim petition as a judgment.  Rather than view this activity as ministerial, the court in Metros deemed it sufficiently significant to render the lien a judicial lien.   The court had decided Metros in 1988, however, before the Third Circuit Court had issued its controlling decisions in Graffen and Schick, both of which declared that "the mere act of docketing a debt by the Clerk  .  .  .  as part of his ministerial duties is insufficient to render [a] lien a judicial lien."  Schick, 418 F.3d at 326, citing Graffen, 984 F.2d at 97.  I believe that the result reached by the court in Metros cannot stand in light of the superceding language of the Third Circuit Court in Graffen and Schick.[33]

### d.  Similar, but different, New Jersey workers' compensation system

---

[33]Perhaps this is why neither party referred me to the Metros case.

Debtor refers me to the decision of the New Jersey Bankruptcy Court in

Straffi v. Anheuser Busch, Inc., (In re Downey), 261 B.R. 124 (Bankr. D.N.J. 2001).  The

court in Downey determined that a lien obtained under New Jersey workers'

compensation law was a judicial, rather than a statutory, lien.  Downey is neither relevant

nor helpful to my analysis of the proper characterization of the Real Property Lien

obtained pursuant to Section 428 of the Pennsylvania Workers' Compensation Act.  The

decision in Downey is based upon the court's construction of the New Jersey workers'

compensation statute, which differs substantially from the Pennsylvania statute.

Significantly, a lien is created under the New Jersey statute only after the Director files

with the Clerk of Court either (1) a statement containing findings of fact, conclusions of

law, award and judgment or (2) a certified copy of the order imposing, and the demand

for payment of, the assessment.  See N.J. Stat. Ann. §34:15-120.3.

The New Jersey statute, unlike its Pennsylvania counterpart, permits the

creation of a lien on real property only after a full administrative decision is rendered

against the employer.  Section 428 of the Pennsylvania Workers' Compensation Act, on

the other hand, provides for the immediate creation of the judgment and its resultant lien

on real property simply upon the filing of a claim petition with the prothonotary.  No

judicial, quasi-judicial, or administrative determination of liability or amount of

compensation and damages is made until after the claim petition has already been filed as

a judgment. 77 Pa. Stat. Ann. §931.

### e.  Policy considerations

22

Finally, I look to two competing bankruptcy policies in considering my decision. On the one hand is the underlying purpose of the entire Bankruptcy Code to provide debtors with a "fresh start." Price v. State Police Federal Credit Union (In re Price), 370 F.3d 362, 373 (3d Cir. 2004). At every turn in interpreting the Bankruptcy Code, courts rely on the mantra of a "fresh start" to guide their decisions. Debtors' ability to extract themselves from financial difficulty is often dependent upon the express power of debtors, through Section 522(f)(1), to avoid certain liens that have been entered against them. 11 U.S.C. §522(f)(1). To assure a successful "fresh start", Debtors are permitted by the Bankruptcy Code to keep and retain from the bankruptcy estate some of their property because it is exempt by Section 522 from sale by a trustee. 11 U.S.C. §522. See Rousey v. Jacoway, 544 U.S. 320, 325 (2005)(exemption of an IRA supports a "fresh start"). Debtors' successful "fresh start" might be threatened if they were unable to avoid liens on property that would otherwise be exempt under the Bankruptcy Code. United States v. Security Industrial Bank, 459 U.S. 70, 71 n.1 (1982)(ability to avoid liens aids in providing a "fresh start"). Hence, the ability to avoid liens, which is provided by Congress through Section 522(f)(1), is fundamental to a "fresh start."

On the other hand, Congress limited debtors' avoidance powers under Section 522(f)(1) to certain categories of liens. Section 522(f)(1) does not permit the avoidance of all liens, but excepts consensual liens and liens created specifically by statutes, both state and federal. Congress and state legislative bodies have believed, and

23

have enacted legislation in response to those beliefs, that the claims of certain creditors[34] are sufficiently worthy of protection that they should be provided with a shortcut, a head start, or some other special benefit or priority to protect or enhance their ability to collect their claims.  Whether it is the mechanics' lien or materialmen's lien of a subcontractor who has not been paid for services or goods in a construction job, the warehousemen's lien of a warehouse owner who has not been paid for storage of goods, or the workers' compensation judgment lien for an employee injured while working for an employer who does not have insurance, certain creditors have historically been, and remain today, specially protected by state and federal statute.  Such liens are not avoidable by debtors through Section 522(f)(1) because Congress recognized the legislative priority that is given to such favored creditors.  The priority is superior to and is not to be undone by the "fresh start" provided to debtors.  Such creditors are not susceptible to the avoidance of their special, legislatively created, statutory liens.

The apparent policy and purpose of Congress in creating the distinction between different types of liens in Section 522(f)(1) is evident:  Non-avoidable consensual and statutory liens for favored creditors trump debtors' "fresh start."  This latter policy and purpose are satisfied by the retention (the non-avoidance) of the judgment lien on real property created pursuant to Section 428 of the Pennsylvania

---

[34]Although not relevant to this matter, the favored creditors also include federal, state, and municipal taxing and other governmental bodies who receive special assistance in obtaining liens and collecting on obligations owed to them.  See, e.g., Commonwealth v. Zufowsky (In re Zufowsky), Nos. 94-22058T, Civ. A. 95-2817, 1995 WL 695108, at *2 (E.D. Pa. Nov. 22, 1995).

Workers' Compensation Act.

I conclude, for all of the reasons set forth above, that Mr. Botzet's Real

Property Lien arising out of Section 428 of the Pennsylvania Workers' Compensation Act

is a statutory lien.  I must therefore deny Debtor's Motion for Summary Judgment on her

Section 522(f)(1) complaint insofar as it pertains to judgment on her behalf relating to the

lien on Debtor's real property in Berks County.

### 4.  Entry of Partial Judgment in Favor of Mr. Botzet

My conclusion that the Real Property Lien is a statutory lien leaves my

determination of Debtor's summary judgment motion on Debtor's avoidance complaint in

a peculiar procedural posture.  Debtor, as the party moving for summary judgment,

cannot prevail on her legal argument.  On the other hand, Mr. Botzet has prevailed on his

argument that the Real Property Lien is, as a matter of law, a statutory lien.  But Mr.

Botzet has not moved for summary judgment or filed a cross-motion for summary

judgment.   Because I find that no genuine issues of material fact affect the matter of the

Real Property Lien, Mr. Botzet is entitled to judgment in his favor on Debtor's avoidance

complaint dealing with the Real Property Lien.  I conclude also that Debtor had adequate

notice of the grounds on which I am making this decision.   I will therefore enter an order

granting summary judgment for Mr. Botzet on Debtor's avoidance complaint pursuant to

Section 522(f)(1), solely as it pertains to the Real Property Lien.

I am instructed and persuaded that this approach is the "sensible and

practical thing to do,"  American Auto Ins. Co. v. Indemnity Ins. Co. of America, 108 F.

Supp. 221, 224 (E.D. Pa. 1952), and that controlling authorities support this approach.

See Celotex Corp., 477 U.S. at 326 ("courts are widely acknowledged to possess the

power to enter summary judgments sua sponte, so long as the losing party was on notice

that she had to come forward with all of her evidence."); American Auto Ins. Co., 108 F.

Supp. at 224, citing with approval Northland Greyhound Lines, Inc. v. Amalgamated

Ass'n. of Street, Electric, Railway and Motor Coach Employees, 66 F. Supp. 431, 433 (D.

Minn. 1946) ("where the case is properly disposable by summary judgment the court

should enter whatever judgment is proper in the circumstances. . . .  While it may be the

better practice to file a cross-motion I do not think that Rule 56(c) proscribes the court's

power to enter judgment because of the mechanical failure of one of the parties to file a

motion."); Holzschuh v. UNUM Life Ins. Co. of America, No. Civ. A. 02-1035, 2002

WL1609983, at *9, n. 10 (E.D. Pa. July 18, 2002)("A district court may grant summary

judgment in favor of a non-movant where it believes that the movant has had adequate

notice of grounds for that judgment, and where there is clear support for such

judgment."); Peiffer v. Lebanon School District, 673 F. Supp. 147, 151-52 (M.D. Pa.

1987)("Where one party has invoked the power of the court to render a summary

judgment against an adversary, Fed. R. Civ. P. 54(c) and 56, when read together, give the

court the power to render a summary judgment for the adversary if it is clear that the case

warrants that result, even thought the adversary has not filed a cross-motion for summary

judgment."), aff'd 848 F.2d 44 (3d Cir. 1988); Henderson v. Goeke, 329 F. Supp. 1160,

1162, n. 5 (E.D. Pa. 1971); The Late Charles Alan Wright, Arthur R. Miller, Mary Kay

26

Kane, Federal Practice & Procedure, §2720.

### 5.  **Statutory vs. Judicial Lien Analysis - Lien on Debtor's Personal Property**

Having decided that the Real Property Lien is a statutory lien, I turn to whether the Personal Property Lien differs from the Real Property Lien.  In late 2003 or early 2004, Mr. Botzet initiated his first sheriff's levy against certain of Debtor's personal property (of whatever nature).[35]  The Personal Property Lien appears to have resulted from the sheriff's levy on Debtor's personal property.  I have no information from which I can determine if the sheriff's sales (none of which actually occurred) had been scheduled pursuant to the sheriff's original levy or if the various bankruptcies of Debtor and her husband might have led to new and later levies.  This issue would be important if some competing creditor also obtained a lien on Debtor's personal property and lien priority were at issue.  At this time, on this record, I do not know if these missing facts might become important. Mr. Botzet had turned to the sheriff's services only after Judge Eader's final decision on Mr. Botzet's disability and damages had been filed by praecipe with the Berks Prothonotary on January 23, 2003.

Further analysis of Section 428 of the Workers' Compensation Act raises two new questions in the context of the Personal Property Lien.  First, the sixth paragraph of Section 428 states, in relevant part: "Execution may issue by first filing with the prothonotary an affidavit that there has been a default in payments of compensation due

---

[35]See the discussion about the unknown nature of the liened personal property at pp. 8 - 9, supra.

on any judgment for compensation  .  .  ..."  77 Pa. Stat. Ann. §951.  Nothing in the record

before me shows that any affidavit of non-payment had been filed after the January 23,

2003 praecipe entering Judge Eader's decision on Mr. Botzet's Claim Petition with the

Berks Prothonotary.  Therefore, I cannot know if any sheriff's levy was legitimately

conducted.  If no levy was valid[36] and if no lien properly exists, Debtor has no lien to

avoid.  Although this issue might alone prevent any grant of summary judgment at this

time, I will continue with my analysis of the Personal Property Lien.

Second, the language of the second paragraph of Section 428,[37] which is the

paragraph that was at the base of the discussion on the Real Property Lien above, shifts

back and forth between reference to a "judgment" and reference to a "lien."  Neither party

has explained the distinction in Section 428, if any, between the two references.

Similarly, neither party has provided me with any authority, and we have found none, that

the lien referred to in, and created by, the second paragraph of Section 428 is somehow a

lien on personal property.  Section 428 refers indiscriminately and without guidance,

differentiation, or explanation to the entry and existence of a "judgment" twice and the

existence of a "lien" thrice.  The question, or course, is whether use of the word "lien"

refers to only the lien on real estate resulting from a judgment or if it silently refers to the

creation of some lien on personal property.

Unlike the Workers' Compensation Act, a similar, lien-creating

---

[36]See 77 Pa. Stat. Ann. §951.

[37]77 Pa. Stat. Ann. §931

Pennsylvania statute clearly and expressly declares that liens on both real and personal

property are created by the statute itself.  The Court in Commonwealth v. Mozingo (In re

Mozingo), 234 B.R. 867 (E.D. Pa. 1999), examined the Pennsylvania Unemployment

Compensation Law relating to the automatic creation of liens on both real and personal

property.  The Mozingo Bankruptcy Court had declared that no lien against personal

property was automatically created, which the District Court rejected as clearly contrary

to the language of the statute.  The Court in Mozingo quoted the following portion of

Section 788.1 of the Pennsylvania Unemployment Compensation Law:

> All contributions and the interest and penalties thereon due and
> payable by an employer under the provisions of this act shall be a
> lien upon the franchises and property, both real and personal,
> including such after-acquired property of the employer liable
> therefor and shall attach thereto from the date a lien for such
> contributions, interest and penalties is entered of record in the
> manner hereinafter provided.  The lien imposed hereunder shall
> have priority from the date of such entry of record  .  .  ..

234 B.R. at 870-71, quoting 43 Pa. Stat. Ann. §788.1.

Because the Pennsylvania General Assembly enacted the Unemployment

Compensation Law, which clearly and expressly provides for the creation of liens on the

employers' real and personal property, principles of statutory construction dictate that the

absence of any such clear and express creation of liens in Section 428 is intentional.

When the Pennsylvania General Assembly has varied the wording in two similar statutory

provisions, the variance may signify a difference in legislative intent.  Pennsylvania

Medical Society v. Foster, 147 Pa. Cmwlth. 528, 548, 608 A.2d 633, 643 (1992); Central

<u>Dauphin School District v. Commonwealth</u>, 146 Pa. Cmwlth. 32, 43, 608 A.2d 564, 569

(1992). I believe that the variance does signify a difference here. Therefore, I conclude

that no lien on personal property is automatically created by virtue of the ambiguous

language of Section 428.

The parties have also provided me with no authority whether the sheriff's

levy to enforce and collect on the workers' compensation judgment created a judicial lien

or a statutory lien under the Bankruptcy Code.[38] Nor have we found any such authority,

one way or the other. I must determine, therefore, if the Personal Property Lien created

by the sheriff's actions is derived from and should be accorded the same favoritism under

Section 428 as the workers' compensation judgment lien at the foundation of the Real

Property Lien. Alternatively, Section 428 might provide no particularly enhanced benefit

for Mr. Botzet's sheriff levy compared to a typical sheriff's levy on an ordinary civil

judgment. In the former, the Personal Property Lien would be a statutory lien; in the

latter it would be a judicial lien.

I observe that quasi-judicial review and approval of the Claim Petition by a

workers' compensation judge were essential before the sheriff was permitted to levy,

while none was necessary for the original entry of the workers' compensation judgment

itself. The Personal Property Lien could be created only following and only by virtue of

---

[38]Neither party briefed, argued, or presented any legal differentiation between Mr.
Botzet's judgment lien on Debtor's real estate and his lien by sheriff's levy on her personal
property.

Judge Eader's final determination, and not from any benefit of Section 428.   The only

statutory advantage or favoritism that Mr. Botzet has enjoyed from Section 428 of the

Workers' Compensation Act is the enhanced priority of the Real Property Lien, which

continually relates back to the date of the original judgment in June 2002.  The Personal

Property Lien has no such relation-back priority.  The sheriff could execute the levy,

according to Section 428, only after Judge Eader's decision was filed by praecipe to

support, and possibly revise, the original judgment.  The final clause of the second

paragraph of Section 428 warns (and prohibits) a workers' compensation creditor from

moving too quickly against personal property:  ".  .  .  but no such execution shall issue on

any compensation judgment before the approval of  .  .  .  the award of compensation on

the said petition."  77 Pa. Stat. Ann. §931.  Before the sheriff could levy, therefore, Judge

Eader had to render his final decision, which was then to be filed with the Berks

Prothonotary.

Of course, the final clause of the second paragraph of Section 428 also

prevents a workers' compensation creditor from executing against real estate until after

the final decision had been made.  77 Pa. Stat. Ann. §931.  That delay, however, would

not affect a creditor negatively because whenever the levy and sale of the real estate

would finally occur, the creditor's claim would relate back to the original judgment date.

With personal property, the lien does not exist, and has no priority, until the sheriff levies

on a debtor's personal property.

I will now revisit the policy considerations that I compared in determining

31

that the Real Property Lien is a statutory lien.  The "fresh start" looms large, once again, as the basic purpose and fundamental goal of the Bankruptcy Code.  Section 428, on the other hand, provides no shortcut, head start, or special priority to Mr. Botzet in the matter of his Personal Property Lien.  To the contrary, Section 428 expressly prevented Mr. Botzet from moving quickly to establish his lien on Debtor's personal property.  Mr. Botzet's lien on Debtor's personal property was created only when the sheriff levied on Debtor's personal property pursuant to Mr. Botzet's execution papers.  42 Pa. Cons. Stat. Ann. §4303(a); General Electric Capital Corp. v. Stone, No. Civ. A. 04-1691, 2005 WL 746420, n. 1 (E.D. Pa. March 29, 2005).  The Personal Property Lien then relates back in priority to the time and date that Mr. Botzet's writ of execution papers were in the hands of the sheriff, Pa. R.C.P. 3137, not to the date of the original judgment.

Mr. Botzet could not try to sell or even establish a lien on Debtor's personal property until after Judge Eader made his full and final decision on the merits of Mr. Botzet's claim of permanent disability and determination of specific damages in the amount of $46,944.85 (as of January 2003).  The Pennsylvania General Assembly limited the benefit to Mr. Botzet of Section 428 to the relation back of all damages to the priority of the original judgment date, but only insofar as it relates to the Real Property Lien.  The Pennsylvania Workers' Compensation Act could have expressly granted a special advantage to Mr. Botzet to collect or enforce a workers' compensation judgment from

32

personal property owned by Debtor similar to that in the Unemployment Law.[39]  But it does not do so.

   Mr. Botzet's ability to enforce his workers' compensation judgment and to collect against Debtor's personal property arose only after Judge Eader's final decision sustained the liability and liquidated the amount of the original judgment.  Only after Mr. Botzet filed his praecipe directing the entry of Judge Eader's decision with the Berks Prothonotary, was he permitted to collect and enforce the judgment against Debtor's personal property through the sheriff's efforts, with no special relation back, favoritism, or other advantage.  Nothing in the Pennsylvania statute, therefore, leads me to believe that the overarching "fresh start" purpose of the Bankruptcy Code should be compromised in this matter.  The statutory scheme of Section 428 does nothing to enhance, protect, or augment the ability of a workers' compensation victim/creditor other than creating the lien priority of the judgment on real estate that continually relates back to the date of the original judgment.

   I reiterate my prior reference to the Collier's bankruptcy treatise,[40] in which the difference between a statutory lien and a judicial lien was simplified:

> [A] judicial lien arises only by virtue of judicial proceedings in
> the absence of which there would not be such a lien (footnote

---

[39]As discussed at pp. 29 - 30, supra, Unemployment Compensation Law liens are expressly created by statute against both real and personal property when the administratively determined claim is filed with the local prothonotary.  43 Pa. Stat. Ann. §788.1;  Braxton, 224 B.R. at 569.

[40]See discussion at p. 15, supra.

33

omitted).  The statutory lien by definition arises without any
judicial proceeding.

<u>Collier on Bankruptcy</u>, 15th Ed. Rev., at  ¶101.53.  The Real Property Lien arises without

any judicial proceeding and is therefore a statutory lien.  The Personal Property Lien

arises only by virtue of judicial proceedings in the absence of which the sheriff's levy and

the resulting lien could not exist and is therefore a judicial lien.

I conclude, finally, that the Personal Property Lien, if it is valid,[41] is a

judicial lien subject to avoidance upon a showing that it impairs some exemption of

Debtor.  The record is silent about a number of issues relating to the nature and value of

Debtor's personal property that might be subject to the lien.  I cannot, on this record,

enter judgment avoiding the Personal Property Lien.  My determination that the Personal

Property Lien is a judicial lien, of course, becomes the law of this case and leaves only

the matter of Debtor's exemption (and the related factual issues) to be tried.

---

[41]<u>See</u> discussion at p. 28, <u>supra</u>.

## C.  DISCHARGEABILITY UNDER SECTION 523(a)(6)

I turn next to Debtor's Motion for Summary Judgment on Mr. Botzet's complaint seeking a determination that the debt owed to him by Debtor is nondischargeable.  The status quo of this (and every) consumer bankruptcy is that many obligations of Debtor will be discharged in her Chapter 7 case pursuant to Section 727. 11 U.S.C. §727.  Section 523(a)(6), however, provides:

> **§ 523.  Exceptions to discharge**
> (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt -
> 
> * * *
> 
> (6) for willful and malicious injury by the debtor to another entity or to the property of another entity;
> 
> * * *

11 U.S.C. §523(a)(6).  Mr. Botzet is seeking to have the debt owed to him by Debtor rendered nondischargeable.  He therefore bears the burden of demonstrating nondischargeability by a preponderance of the evidence.  <u>Grogan v. Garner</u>, 498 U.S. 279, 291 (1991).  Debtor and Mr. Botzet agree that for a debt to have arisen from a willful and malicious injury under Section 523(a)(6), I must find that Debtor's actions "either have a purpose of producing injury or have a substantial certainty of producing injury." <u>Conte v. Gautam</u> (<u>In re Conte</u>), 33 F.3d 303, 307 (3d Cir. 1994).   Some courts have found that debts arising from a debtor's failure to maintain workers' compensation insurance are not dischargeable under Section 523(a)(6).  <u>Strauss v Zielinski</u> (<u>In re</u>

Strauss), 99 B.R. 396 (N.D. Ill. 1989); Vig v. Erickson (In re Erickson), 89 B.R. 850

(Bankr. D. Idaho 1988); Juliano v Holmes (In re Holmes), 53 B.R. 268 (Bankr. W.D. Pa.

1985).  Other courts have found to the contrary that these types of debts are dischargeable

even when tested under Section 523(a)(6).  Hope v. Walker (In re Walker), 48 F.3d 1161

(11th Cir. 1995); Szewczyk v. Wojtaszek, 164 B.R. 604 (N.D. Ill. 1994); Eaves v. Hampel

(In re Hampel), 110 B.R. 88 (Bankr. M.D. Ga. 1990).

      I agree with Mr. Botzet that Debtor's Motion for Summary Judgment on

Mr. Botzet's dischargeability complaint is premature.  Genuine issues of material fact

exist concerning, inter alia, the circumstances surrounding Debtor's failure to maintain

workers' compensation insurance on behalf of D & L.  These missing material facts also

include the credibility of the parties and witnesses who will testify regarding the

circumstances behind the failure to obtain insurance and the full factual issues relating to

the issues discussed immediately below.

      Debtor testified in her deposition that, because she was suffering from a

brain tumor, D & L did not have workers' compensation insurance in place when Mr.

Botzet was injured on January 22, 2001.  She also testified, however, that she had not

been diagnosed with the brain tumor until 2003.[42]  The record shows that D & L had other

employees who had suffered work related injuries before Mr. Botzet's accident and who

---

[42]Debtor's Deposition, p. 5.

were not covered by workers' compensation insurance.[43]  Finally, D & L was engaged in

construction and demolition work and Mr. Botzet performed heavy duty and hazardous

work in connection with his employment by D & L.[44]  A full description at trial of the

nature and alleged danger of Mr. Botzet's job will be necessary.

The preliminary and incomplete facts that I have on this record are

insufficient for me to determine whether Debtor's obligation to Mr. Botzet arose from a

willful and malicious injury under Section 523(a)(6).   To the contrary, they show that

genuine issues of material fact exist and that I need a better factual record to resolve this

dispute.  I cannot determine at this time, without the benefit of a trial, whether the debt at

issue herein is nondischargeable under Section 523(a)(6).  For this reason, I deny

Debtor's Motion for Summary Judgment as it relates to Mr. Botzet's complaint seeking

nondischargeability of his claim against Debtor pursuant to Section 523(a)(6).

---

[43]Declaration of Mr. Botzet, p.3, ¶12; Declaration of William D. Freiwald, p.p. 1-2,  ¶¶2,
4 - 8 (attached as Exhibit C to Mr. Botzet's Memorandum in Opposition to Motion for Summary
Judgment filed on September 23, 2008, docket entry 29).

[44]Declaration of Mr. Botzet, pp. 1-2, ¶¶1, 2.

# IV.  CONCLUSION

I will deny Debtor's request that I enter summary judgment in her behalf on the issue of the Real Property Lien because I conclude that the judgment lien on Debtor's real estate constitutes a statutory lien that she cannot avoid under Section 522(f)(1).  At the same time, that conclusion of law leads me to enter summary judgment in favor of Mr. Botzet on this issue because the Real Property Lien cannot be avoided.

Mr. Botzet received no special advantage, benefit, or priority from the Pennsylvania Worker's Compensation Act in creating the Personal Property Lien.  Mr. Botzet was actually proscribed by Section 428 from proceeding against Debtor's personal property until (1) Judge Eader decided the liability and damages aspects of this matter, (2) Mr. Botzet filed his praecipe directing the Prothonotary to revise the June 2002 judgment, and (3) Mr. Botzet filed his affidavit of non-payment.  Thus, only after Judge Eader's full and final determination could Mr. Botzet create the Personal Property Lien.

I return to the basic policy of a "fresh start" under the Bankruptcy Code. Section 428 of the Pennsylvania Workers' Compensation Act provides no special advantage or benefit to a workers' compensation creditor who would like to obtain a lien against the employer's personal property.  I conclude from all of the above that, if the Personal Property Lien is valid,[45] it is a judicial lien that could be subject to avoidance.

---

[45]See discussion at p. 28, supra, and the sixth paragraph of Section 428 of the Pennsylvania Workers' Compensation Act, 77 Pa. Stat. Ann. §951, stating the requirement of an

I cannot determine on this record, however, the factual issues relating to the validity and timing of the sheriff's levy (or levies) and the nature and description of the property that is subject to the Personal Property Lien.  The parties' complete presentation at trial of all necessary factual and legal issues relating to the nature of the Personal Property Lien, therefore, is essential for me to determine if the Personal Property Lien impairs any of Debtor's exemption rights.   Although I conclude that the Personal Property Lien is a judicial lien, I will not enter any judgment in the matter of the Personal Property Lien.

Finally, I cannot enter judgment on the dischargeability issue because I need additional facts, including a determination of numerous material facts and the credibility of the parties and other witnesses.

An appropriate Order follows.


Date:   February 10, 2009

---

affidavit of non-payment before execution proceedings may be undertaken to levy on a workers' compensation judgment.

UNITED STATES BANKRUPTCY COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

In re: LAURIE D. SMITH  f/d/b/a          :     Case No. 08-20178REF
       D & L CONTRACTORS,          :     Chapter 7
       Debtor          :

------------------------------------------------------------------------

LAURIE D. SMITH,          :     Adv. No. 08-2014
       Plaintiff          :
    v.          :
BRADLEY BOTZET,          :
       Defendant          :

------------------------------------------------------------------------

BRADLEY BOTZET,          :     Adv. No. 08-2040
       Plaintiff          :     Consolidated with Adv. No. 08-2014
    v.          :
LAURIE D. SMITH,          :
       Defendant          :

## ORDER

AND NOW, this 10th day of February, 2009, upon my consideration of Debtor's Motion for Summary Judgment, the Answer thereto filed by Bradley Botzet, and the briefs and supplemental briefs filed by the parties, and after oral argument, and in accordance with and based upon the discussion contained in the accompanying Memorandum Opinion of even date herewith,

IT IS HEREBY ORDERED that Debtor's Motion for Summary Judgment on Debtor's complaint seeking to avoid Mr. Botzet's Real Property Lien (as defined in the Memorandum) under 11 U.S.C. §522(f)(1) is hereby DENIED.

IT IS FURTHER ORDERED that SUMMARY JUDGMENT is hereby GRANTED in favor of Mr. Botzet and against Debtor on Debtor's Complaint seeking to avoid Mr. Botzet's liens under 11 U.S.C. §522(f)(1), solely insofar as it pertains to the Real Property Lien (as defined in the Memorandum Opinion).

IT IS FURTHER ORDERED that Debtor's Motion for Summary Judgment on Debtor's complaint seeking to avoid Mr. Botzet's Personal Property Lien (as defined in the Memorandum Opinion) under 11 U.S.C. §522(f)(1), is hereby DENIED.

IT IS FURTHER ORDERED that Debtor's Motion for Summary Judgment on Mr. Botzet's complaint contesting the dischargeability of the debt owed to him by Debtor under 11 U.S.C. §523(a)(6) is hereby DENIED.

IT IS FURTHER ORDERED that the **Pre-Trial Conference**, scheduled for **10:30 a.m., on February 25, 2009**, shall proceed as scheduled.

IT IS FURTHER ORDERED that both Paragraphs 5.H. of the previous Pre-Trial Orders in these consolidated adversary proceedings are amended as follows:

> H.  On or before **Monday, February 23, 2009**, the parties shall file a Joint Pre-Trial Statement.  The Joint Pre-Trial Statement shall be signed by all parties, either personally or through counsel if a party is represented by counsel.  It is the obligation of the **Debtor's** counsel to initiate the preparation of the joint Pre-Trial Statement and to assemble and file the Joint Pre-Trial Statement. **Debtor's** counsel shall submit a proposed Joint Pre-Trial Statement to the opposing party's counsel on or before **Friday, February 17, 2009.**

BY THE COURT

_____
RICHARD E. FEHLING
United States Bankruptcy Judge